[No. A018817. First Dist., Div. One. Oct. 23, 1984.]

PHIZ MEZEY, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Van Bourg, Allen, Weinberg & Roger, Van Bourg, Weinberg, Roger & Rosenfeld and Stewart Weinberg for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Nancy S. Wainwright and Richard G. Tullis, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**RUSHING, J.**\*—Plaintiff Phiz Mezey was an instructor at San Francisco State College in 1950. She was presented with a loyalty oath and refused to sign it. She was dismissed. In this action she seeks to vindicate the action she took then by requiring the State of California to compensate her for her lost wages and benefits. This case does not raise the issue of the constitutionality of the loyalty oath. The California Supreme Court has decided that issue in *Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18 [64 Cal.Rptr. 409, 434 P.2d 961]. Nor does Mezey seek damages for wrongful dismissal. She claims that the state wrongfully "refused to reinstate her" following the decision in *Vogel, supra.* There is no question raised in this appeal concerning the appellant's right to redress. The sole issue is whether there is any limitation on the time within which to sue following the admitted denial of a right arising from an unconstitutional act on the part of the state. More precisely, her claim is that her case is governed by the Supreme Court decision in *Monroe* v. *Trustees of the California State Colleges* (1971) 6 Cal.3d 399 [99 Cal.Rptr. 129, 491 P.2d 1105].

In June 1981 plaintiff filed her complaint. A demurrer was sustained with leave to amend. Plaintiff declined to amend, and the case was dismissed. She appeals from that order of dismissal.

*Monroe* v. *Trustees of the California State Colleges, supra,* 6 Cal.3d 399, is a similar case. Indeed, on the issue of wrongful refusal to reinstate, it is on all fours. In *Monroe,* the plaintiff had been discharged from his state college job for refusal to sign the loyalty oath; there, as here, Monroe had applied for reinstatement after the *Vogel* decision and had been denied. The Supreme Court held that Monroe's claim for *wrongful discharge* was barred by the statute of limitations; the cause of action accrued in 1953 when Monroe's dismissal was affirmed by the State Personnel Board. Nevertheless, the Supreme Court held that a cause of action for wrongful *refusal to reinstate* was made out and that the cause of action thereon accrued when his request for reinstatement was denied: "[W]e have determined that although the statute of limitations does presently preclude an attack on petitioner's *initial discharge,* the instant complaint attacks not only the propriety of the 1950 discharge but also the validity of the Trustees' *refusal to reinstate* Monroe in 1968, after the *Vogel* decision. Insofar as the Trustees' 1968 refusal to reinstate him constitutes the basis of petitioner's suit, we conclude that this action, commenced in December 1968, was timely filed." (*Id.,* at p. 402, italics in original.)

*Assigned by the Chairperson of the Judicial Council.

The plaintiff has submitted to the defendant California State Universities and Colleges four separate requests for reinstatement as well as a claim to the State Board of Control.[1]

Her first request for reinstatement occurred just after the announcement of *Vogel* v. *County of Los Angeles, supra,* 68 Cal.2d 18, in 1967. Her second request occurred in 1972 which, like the first, was denied. Later she submitted two other requests for reinstatement to officials of San Francisco State University which were also denied.

In 1977 the State Board of Control solicited claims from persons terminated from state employment for refusal to sign the loyalty oath. In 1979 plaintiff submitted a claim and was awarded $25,000. This sum was never paid, however, because the Legislature refused to approve the award. The legislative action was in March or April 1980.

In June of 1981 plaintiff, for the first time, filed a lawsuit.[2]

## I. *Statute of Limitations*

In her first cause of action plaintiff seeks damages on the theory of wrongful refusal to reinstate. Plaintiff concedes that pursuant to *Monroe* v. *Trustees of the California State Colleges, supra,* 6 Cal.3d at pages 405-406, she has no viable cause of action for wrongful dismissal. Her theory is, rather, that she should have been reinstated once the loyalty oath was declared unconstitutional.

Yet, such a cause of action for refusal to reinstate accrued on the date plaintiff's request for reinstatement was denied. (*Id.,* at pp. 406, 413-414; cf. *Peles* v. *La Bounty* (1979) 90 Cal.App.3d 431, 435-436 [153 Cal.Rptr. 571] [action for reinstatement by student expelled for plagiarism].) Here, plaintiff requested reinstatement in December 1967, immediately after the *Vogel* decision, and her request was denied. Her complaint was not filed until June 1981—more than 13 years later.[3]

---

[1]We note the recent $25,000 appropriation by the State Assembly to compensate Bernice Carrico Wood for the termination of her husband for refusal to sign the Levering Loyalty Oath. (S. F. Chronicle (Aug. 15, 1984) p. 10, cols. 3-4.)

[2]In the spring of 1978 plaintiff was hired by San Francisco State University, but she was deemed a "new hire" and not a reinstated employee.

[3]It might be argued that no cause of action accrued until the *Monroe* decision clarified the law. (But see *Monroe, supra,* 6 Cal.3d at p. 408, fn. 5 [existence of contrary precedent does not toll statute of limitations].) Under this approach plaintiff's 1972 request for reinstatement marked the beginning of the limitations period. Nevertheless, her complaint was still far too late. Her complaint was filed in June 1981—nine years after her second request for reinstatement was denied in March 1972.

In an attempt to get around the statute of limitations, plaintiff construes her cause of action as "ongoing," such that she has the right to bring a lawsuit at any time but is merely restricted in the amount of backpay she may recover.

The concept of a continuing duty has been employed to find a new cause of action upon each failure to perform. (E.g., *Conway* v. *Bughouse, Inc.* (1980) 105 Cal.App.3d 194, 200 [164 Cal.Rptr. 585] [failure to make installment payments]; *Oil Base, Inc.* v. *Continental Cas. Co.* (1969) 271 Cal.App.2d 378, 389 [76 Cal.Rptr. 594] [continuing duty of insurer to defend insured].) But that concept has no application where the plaintiff is seeking to establish his right to receive the payments. (*Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 684 [138 Cal.Rptr. 338].) In *Baillargeon* the plaintiff sought to establish her rights to receive pension benefits. In response to the employer's assertion that plaintiff's claim was barred by the statute of limitations, she argued that the limitations period ran from the due date of each installment. But the court rejected that approach, reasoning that plaintiff was not suing to recover on installments which had been granted. "Plaintiff's reasoning is not persuasive here. The applicable principle is stated in *Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800]: 'An action to determine the existence of the right thus necessarily precedes *and is distinct from* an action to recover instalments [*sic*] which have fallen due *after* the pension has been granted.' (Italics added.) Plaintiff herein is seeking to establish her *right* to benefits; she is *not* suing to recover on installments *after* benefits have been granted." (At p. 684; see also *County of San Diego* v. *Myers* (1983) 147 Cal.App.3d 417, 422 [195 Cal.Rptr. 124].)

In the present case plaintiff, too, is seeking a determination of her right to reinstatement, backpay and other damages. She is not seeking to recover benefits which have already been granted. The concept of continuing breach is not applicable.

## II. *Waiver*

██ Plaintiff argues that the state waived its right to raise the defense of statute of limitations when the Board of Control accepted plaintiff's 1979 claim, acted on it and indeed awarded her $25,000.

The conduct which plaintiff characterizes as a waiver pertains only to plaintiff's *1979* claim. Nothing done by the Board of Control in soliciting claims[4] could have lulled plaintiff into a false sense of security about her

---

[4]According to the complaint, in 1977 the Board of Control solicited claims, noting that it possessed " 'equitable authority and [was] not bound by the statute of limitations.' "

*earlier* requests for reinstatement. Yet plaintiff took no legal action on the denial of her requests for reinstatement. Her request following *Monroe* was denied in 1972, five years before the Board of Control invited plaintiff's claim.

Moreover, plaintiff's reliance on the action of the Board of Control—soliciting, accepting, considering and approving her 1979 claim—suggests that plaintiff's true grievance is that the Legislature did not authorize payment of the $25,000 award. In that respect, plaintiff's lawsuit seems to be an effort to do indirectly what she cannot do directly. She seeks to compel the Board of Control to make the payment. This she cannot do. ■ The court has no power to compel the Legislature to enact an appropriation law. (*Myers* v. *English* (1858) 9 Cal. 341, 349; *Westinghouse Electric Co.* v. *Chambers* (1915) 169 Cal. 131, 135 [145 Cal.Rptr. 1025]; *California State Employees' Assn.* v. *Flournoy* (1973) 32 Cal.App.3d 219, 234 [108 Cal.Rptr. 251], cert. den., 414 U.S. 1093 [38 L.Ed.2d 550, 94 S.Ct. 724]; *California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 108-109 [108 Cal.Rptr. 60]; cf. *Mandel* v. *Myers* (1981) 29 Cal.3d 531, 539-551 [174 Cal.Rptr. 841, 629 P.2d 935].)

### III. *Civil Rights Action*

■ In her second cause of action plaintiff alleged a violation of her civil rights. (42 U.S.C.A. § 1983.) Aside from the statute of limitations problem, plaintiff faces another hurdle here. The named defendants are the state along with the State Board of Control and the trustees of the California State Universities and Colleges. It is settled law that a state and its agencies are not "persons" within the meaning of section 1983. (*Alabama* v. *Pugh* (1978) 438 U.S. 781, 782 [57 L.Ed.2d 1114, 1116, 98 S.Ct. 3057] [state and State Board of Corrections]; *Taylor* v. *Mitzel* (1978) 82 Cal.App.3d 665, 670 [147 Cal.Rptr. 323].)

■ The last date upon which plaintiff requested reinstatement was November 19, 1976. Her request was denied. Nevertheless in 1978 plaintiff was appointed to a part-time position at the university. In August of 1978 she was appointed to a full-time, tenure-track position as a new employee of San Francisco State University. As of August 1978 she was in the same position she occupied when she was terminated for "gross unprofessional conduct" because she refused to sign the "Levering Loyalty Oath."

Unless one takes the view that her right to redress accrues even today, the last date for accrual of the cause of action was November 19, 1976.

Assuming for the moment that the statute of limitations in this case is one year for any personal injury (Code Civ. Proc., § 340) action and four years

on a contract (Code Civ. Proc., § 337), the last date for filing an action for personal injury would have been November 19, 1977, and the last day for filing a claim on the contract would have been November 19, 1980. The complaint for damages was filed June 4, 1981.

Nothing in this record save the claim that appellant was misled by the action of the Board of Control explains any of the reasons for this lengthy delay in bringing a cause of action. Appellant argues that this is the same case as *Monroe* v. *Trustees of the California State Colleges, supra,* 6 Cal.3d 399, yet the clearest difference is that Monroe filed his complaint within eight months after being denied his request for reinstatement. Here the lawsuit was filed, under the best view of the case, five years after her last request for reinstatement and fourteen years after her first. The intricate politics often associated with tenure-track appointments in colleges and universities may offer an explanation as to why plaintiff did not press her claim. If there are other reasons for her action, she took no steps to make those reasons available to this court. The trial court in its ruling allowed for amendment to the complaint. No attempt to amend was made, and accordingly we perceive no error in the trial court's action in doing what it was bound to do under the law.

The judgment of dismissal is affirmed.

Elkington, Acting P. J., and Holmdahl, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 31, 1985.